**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

UNITED STATES OF AMERICA,     )
                                    )
           Plaintiff,        )     Case No.  1:10-cv-237-SJM
      v.                    )
                                      )
EBERT G. BEEMAN, *et al.,*       )
                                    )
          Defendants.      )

## <u>MEMORANDUM OPINION AND ORDER</u>

McLAUGHLIN, SEAN J., District J.,

     In this civil action the United States seeks to reduce to judgment the

assessments made against Ebert G. Beeman ("Beeman"), the defendant taxpayer, for

unpaid federal income taxes and statutory additions to tax.  The United States further

seeks to:  (i) foreclose on the corresponding federal tax liens which the United States

holds against certain real properties allegedly owned by Beeman, (ii) sell the properties,

and (iii) distribute the proceeds in accordance with the rights of the parties, with

amounts attributable to Beeman's interests to be paid to the United States in

satisfaction of his unpaid federal tax liabilities.  Finally, the United States seeks to obtain

a determination that certain entities controlled by Beeman are his nominees or alter

egos and/or obtain a declaration that certain transfers relating to these properties were

fraudulent transfers or sham transactions.[1]  Besides Beeman, the named Defendants

include Beeman's parents, Howard and Lillian Beeman, and two corporate entities --

---

[1] This Court has subject matter jurisdiction over the present action by virtue of 28 U.S.C. §§ 1331, 1340, and 1345 and 26 U.S.C. § 7402(a).

Fifth Third Financial, LLC ("Fifth Third") and Autumn Frost, LLC ("Autumn Frost"), both of which are limited liability companies organized under the laws of New Mexico and wholly owned by Beeman.

Presently pending before this Court are numerous motions, including motions by Beeman to dismiss the complaint and motions by the United States for summary judgment on its various claims. For the reasons stated below, Beeman's various motions will be denied. The United States' first motion for summary judgment (relative to Count I of the complaint) will be granted, as will the government's motion to dismiss Beeman's counterclaims. The Court will defer its ruling relative to the United States' second motion for summary judgment pending an opportunity for Defendants Fifth Third and Autumn Frost to secure legal counsel and pending an opportunity for Fifth Third, Autumn Frost, and Howard Beeman to show cause why judgment should not be entered in favor of the United States relative to Counts II and III of the complaint.

## I.    FACTUAL BACKGROUND

Beeman is a resident of Erie County, Pennsylvania, which is located within this judicial district. Beginning in the year 2000 and continuing through 2008, the IRS made assessments against Beeman for unpaid federal taxes and certain statutory additions relative to the tax years 1994, 1996, 1997, 2002, 2003, 2004, 2005 and 2006. Notices and demands for payment were made upon Beeman but, to date, Beeman has failed to pay the full amounts allegedly due. In the meantime, interest, costs, and statutory additions accrued on the assessments such that, as of September 20, 2010, a sum of $2,116,390.74 allegedly remained due and owing to the United States.

By virtue of the assessments previously described, federal tax liens arose pursuant to 26 U.S.C. §§ 6321 and 6322, and these liens attached to all property and rights to property then owned or thereafter acquired by Beeman.  Notices of these federal tax liens were filed in the office of the Prothonotary for Erie County.

In the course of its investigation, the IRS discovered that Beeman acquired an interest in four separate properties (referred to herein as the "Four Real Properties"), all of which are located in Erie County within this judicial district.[2]  It is the position of the United States that its federal tax liens attach to these properties.

The IRS further discovered that Defendant Fifth Third acquired a putative interest in the Four Real Properties based on a deed dated October 16, 2007 and that Defendant Autumn Frost acquired a putative interest in certain of the Four Real Properties based upon a mortgage interest dated March 21, 2007 which was assigned to it on February 4, 2008.  It is the position of the United States that any financial interests asserted by Fifth Third and/or Autumn Frost relative to the Four Real Properties is void inasmuch as Beeman was enjoined from transferring the properties and/or mortgaging them by virtue of a prior court order.

The IRS also discovered that Defendants Howard Beeman and Lillian Beeman purportedly acquired or attempted to acquire an interest in the Four Real Properties based on a mortgage dated February 3, 1992.  The United States challenges any assertion these Defendants may make relative to an interest in the Four Real Properties

---

[2] These consist of properties located at:  (i) 12744 Route 19 in Waterford, Pennsylvania; (ii) 12752 Route 19 in Waterford, Pennsylvania; (iii) 12803 Route 19 in Waterford, Pennsylvania; and (iv) 777 Old State Road in Waterford, Pennsylvania.

based on the fact that both Howard Beeman's and Lillian Beeman's respective interests were declared fraudulent and void by the same court order previously mentioned.

## II.    PROCEDURAL HISTORY

On September 22, 2010, based on the foregoing facts, the United States commenced the instant action against the named Defendants. The complaint [1] asserts six causes of action.  Count I of the Complaint seeks a court order reducing Beeman's various tax assessments to judgment in the amount of $2,116,390.74 as of September 20, 2010, together with all applicable interest and penalties that have been accruing since that time.  Count II seeks an order adjudging and decreeing:  (i) that the United States has valid and subsisting federal tax liens on all property and rights to property of Beeman, including his interest in the Four Real Properties; (ii) that any putative interests in the Four Real Properties on the part of Fifth Third, Autumn Frost, Howard Beeman, or Lillian Beeman are void; and (iii) that the federal tax lien attaching to Beeman's interest in the Four Real Properties be foreclosed upon and the proceeds applied toward Beeman's tax liabilities for the years in question.  Count III seeks an order adjudging and decreeing that Fifth Third is the nominee or alter ego of Beeman.  Counts IV and V seeks orders setting aside, respectively, Beeman's transfer of his interest in the Four Real Properties to Fifth Third and his transfer of the mortgage interest in the properties located at 12744 and 12752 Route 19 to Autumn Frost on the ground that these transfers were fraudulent.  In the alternative, Count VI seeks an order adjudging and decreeing that the various transfers between Beeman and the other named Defendants

are sham transactions and that Beeman is the true and sole owner of the Four Real Properties.

In response to the complaint, Beeman, proceeding *pro se*, filed an answer [7] and three separate motions to dismiss citing lack of subject matter jurisdiction [8], improper venue [9], and failure to state a cognizable claim for legal relief [10]. The United States has filed its response to these motions [11] and the matter is ripe for consideration.

Subsequently, on November 2, 2010, the United States filed a motion for partial summary judgment relative to Count I of the complaint [12], to which Beeman replied by way of a document styled "Answer and Verified Complaint of Libel" [22]. On December 15, 2010, the United States filed a motion to dismiss Beeman's counterclaims [26]. Beeman has since filed a motion to dismiss the government's motion for partial summary judgment [32], along with a supporting brief [36]. The United States filed its response [37] to this motion on March 17, 2011, and Beeman, in turn, has filed a reply to the government's response [38].

In the meantime, the Clerk of Court on December 3, 2010 entered a default against Defendants Fifth Third, Autumn Frost, and Howard Beeman based on the failure of these Defendants to appear, plead or otherwise defend the litigation [21].[3] On December 28, 2010 Beeman filed a Motion to Set Aside Clerk's Entry of Default [27]. The United States has filed its response [28] to this motion.

---

[3] No default was entered against Defendant Lillian Beeman, who had filed an answer to the complaint [15] on November 5, 2010.

Finally, on December 30, 2010, the United States filed a Second Motion for Summary Judgment [29] relative to the remaining claims in the complaint. Defendants were directed to respond to this motion on or before March 17, 2011; however, no documents have been filed by the Defendants subsequent to the Court's briefing order other than Beeman's previously-referenced brief [36] and reply [38] in support of his motion [32] to dismiss the United States' first motion for partial summary judgment.

## III.     STANDARD OF REVIEW

A. <u>Pro Se Pleadings</u>

Pro se pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520-521 (1972). If the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or litigant's unfamiliarity with pleading requirements. *Boag v. MacDougall*, 454 U.S. 364 (1982); *United States ex rel. Montgomery v. Bierley*, 141 F.2d 552, 555 (3d Cir.1969) (petition prepared by a prisoner may be inartfully drawn and should be read "with a measure of tolerance"); *Smith v. U.S. District Court*, 956 F.2d 295 (D.C.Cir.1992); *Freeman v. Department of Corrections*, 949 F.2d 360 (10th Cir.1991). Under our liberal pleading rules, during the initial stages of litigation, a district court should construe all allegations in the pleadings in favor of the complainant. *Gibbs v. Roman*, 116 F.3d 83 (3d Cir.1997). *See, e.g., Nami v. Fauver*, 82 F.3d 63, 65 (3d Cir.1996) (discussing Fed.R.Civ.P. 12(b)(6) standard); *Markowitz v. Northeast Land Company*, 906 F.2d 100,

103 (3d Cir.1990) (same).  Because Beeman is proceeding pro se in this case, the foregoing standards will be applied to his papers.

B.  Motion to Dismiss

In reviewing a motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6), the claims at issue must be viewed in the light most favorable to the complainant and all the well-pleaded allegations must be accepted as true.  *Erickson v. Pardus*, 551 U.S. 89, 95 (2007).  A complaint must be dismissed pursuant to Rule 12(b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (rejecting the traditional 12(b)(6) standard set forth in *Conley v. Gibson*, 355 U.S. 41 (1957)).  *See also Ashcroft v. Iqbal*, --- U.S. ----, ----, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (May 18, 2009) (specifically applying *Twombly* analysis beyond the context of the Sherman Act).

A court need not accept inferences drawn by the plaintiff if they are unsupported by the facts as set forth in the complaint.  *See California Pub. Employee Ret. Sys. v. The Chubb Corp.*, 394 F.3d 126, 143 (3d Cir.2004) (*citing Morse v. Lower Merion School Dist.*, 132 F.3d 902, 906 (3d Cir.1997)).  Nor must a court accept legal conclusions set forth as factual allegations. *Twombly*, 550 U.S. at 556 (*citing Papasan v. Allain*, 478 U.S. 265, 286 (1986)).  *See also McTernan v. City of York, Pennsylvania*, 577 F.3d 521, 531 (3d Cir.2009) ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.") (*quoting Iqbal*, --- U.S. at ----, 129 S. Ct. at 1949) (alteration in the original).  A plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level."

*Twombly*, 550 U.S. at 556.  Although the United States Supreme Court does "not require heightened fact pleading of specifics, [the Court does require] enough facts to state a claim to relief that is plausible on its face."  *Id*. at 570.

In other words, at the motion to dismiss stage, a plaintiff is "required to make a 'showing' rather than a blanket assertion of an entitlement to relief."  *Smith v. Sullivan*, 2008 WL 482469, at *1 (D. Del. February 22, 2008) (*quoting Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir.2008)). "This does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Phillips*, 515 F.3d at 232 (*quoting Twombly*, 550 U.S. at 556 n. 3).

Recently, the Third Circuit expounded on the *Twombly/Iqbal/Phillips* line of cases:

> To prevent dismissal, all civil complaints must now set out sufficient factual matter to show that the claim is facially plausible.  This then allows the court to draw the reasonable inference that the defendant is liable for the alleged misconduct.
>
> * * *
>
> After *Iqbal,* when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis.  First, the factual and legal elements of a claim should be separated.  The district court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions.  Second, a district court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a plausible claim for relief.  In other words, a complaint must do more than allege the plaintiff's entitlement to relief.  A complaint has to show such an entitlement with its facts.  As the Supreme Court instructed in *Iqbal,* where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not shown-that the pleader is entitled to relief.  This plausibility requirement will be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.

*Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir.2009).

C. <u>Motion for Summary Judgment</u>

Federal Rule of Civil Procedure 56(a) provides that summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party has the initial burden of proving the absence of a genuinely disputed material fact relative to the clams in question. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Country Floors, Inc. v. Partnership Composed of Gepner and Ford*, 930 F.2d 1056, 1061 (3d Cir.1990). A material fact is a fact whose resolution will affect the outcome of the case under applicable law. *Anderson v. Liberty Lobby, Inc*. 477 U.S. 242, 248 (1986).

The burden then shifts to the non-movant to demonstrate the existence of a genuine issue for trial. *Matsushita Elec. Indus. Company v. Zenith Radio Corp.*, 475 U.S. 574 (1986); *Williams v. Borough of West Chester, Pa*., 891 F.2d 458, 460-461 (3d Cir.1989). Under Rule 56(c)(1), a non-moving party asserting that a fact is genuinely disputed must support such an assertion by: "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations…, admissions, interrogatory answers, or other materials; or (B) showing that the materials citied [by the opposing party] do not establish the absence … of a genuine dispute..." Fed. R. Civ. P. 56(c)(1).

At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a "genuine" dispute as to those facts. *Scott v. Harris,* 550 U.S. 372, 380 (2007). A dispute is "genuine" only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson*, 477 U.S. at 247-249. See *Matsushita Elec. Industrial Co. v. Zenith Radio Corp*., 475 U.S.

574, 586–587 (1986) ("Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" ).

## IV.    DISCUSSION

A. <u>Beeman's Motions to Dismiss the Complaint</u>

Beeman has filed three single-sentence motions to dismiss the complaint based on alleged lack of subject matter jurisdiction, improper venue, and "failure to state a legitimate claim."  His answer to the complaint expounds on his theory as to why the case should be dismissed.  None of the asserted bases for dismissal has merit.

Subject matter jurisdiction for this civil action exists pursuant to 26 U.S.C. §7402(a) (conferring jurisdiction upon the district courts to, among other things, issue such orders and render such judgments as may be required to enforce the internal revenue laws), §7402(e) (conferring jurisdiction upon district courts to quiet title to property if title claimed by the United States to such property was derived from enforcement of a lien under Title 26), 28 U.S.C. § 1340 (conferring original jurisdiction upon federal district courts over "any civil action arising under any Act of Congress providing for internal revenue"), and 28 U.S.C. § 1345 (conferring upon the district courts original jurisdiction over all civil actions commenced by the United States or by any agency or officer thereof expressly authorized to sue by Act of Congress).

The legal right of the United States to commence this type of civil action is established by 26 U.S.C. §7403 (authorizing actions to enforce tax liens or to subject property to payment of taxes).  *See also* United States v. Stuler, No. 10-2211, 396 Fed. Appx. 798, 800-01, 2010 WL 3899620 at **2 (3d Cir. Oct. 6, 2010) (noting that the

Internal Revenue Code permits the United States to institute an action for the judicial sale of a delinquent taxpayer's property to satisfy tax debts and citing § 7403(a)).

Pursuant to 28 U.S.C. 1396, venue is appropriate in this judicial district. According to that statute, "Any civil action for the collection of internal revenue taxes may be brought in the district where the liability for such tax accrues, in the district of the taxpayer's residence, or in the district where the return was filed." 28 U.S.C. § 1396. There is no dispute on this record that Beeman has resided in Waterford, Pennsylvania during all of the years in question. Since Waterford is within this Court's jurisdiction, venue is proper in this Court.

Though his answer to the complaint is barely comprehensible, Beeman appears to theorize that this civil action is unauthorized because: (a) the United States can only collect taxes arising from tobacco, distilled spirits, and cotton; (b) the United States can only impose an income tax on corporate profits; and (c) the United States cannot tax Beeman because he is a "natural person." These arguments are patently lacking in merit.

As to Beeman's first contention – that the United States lacks power to tax beyond tobacco, distilled liquor and cotton -- other courts have rejected such theories as frivolous. *See Lanier v. Wachovia Bank*, Civil Action No. 2:09-cv-4566-WY, 2010 WL 1141267 at *8 (E.D. Pa. Mar. 24, 2010) (rejecting taxpayer's argument that the federal government only had the power to tax her for the activities of cotton and distilled spirits); *Bell Consumers, Inc. v. Lay*, 203 F. Supp. 2d 1202, 1208 (W.D. Wash. 2002) (allegations that "the sections of the Internal Revenue Code governing assessments,

liens and levies apply only to excise tax upon unmanufactured cotton and distilled spirits and other special (occupational) tax" are "frivolous and without merit").

As the United States observes, Congress is constitutionally empowered to "lay and collect taxes on incomes, from whatever source derived…" U.S. Const. amend. XVI. Section 61 of the Internal Revenue Code, accordingly, defines the term "gross income" broadly to mean "all income from whatever source derived," including (but not limited to) several types of enumerated categories. *See* 26 U.S.C. 61(a).

There is likewise no support for Beeman's theory that the United States Treasury is limited to imposing taxes only on corporate profits, as opposed to individuals and "natural persons." *See United States v. Williamson*, No. Civ. 04-885 BB/WDS, 2005 WL 3801811 at *2 (D.N.M. Dc. 29, 2005) (describing as frivolous various arguments by tax protesters, including the argument that the Supreme Court has defined "income" to include only corporate profit, and noting that these arguments have been "rejected over and over again by court after court"). *See also Stelly v. Cm'r of Internal Revenue*, 761 F.2d 1113, 1115 (5th Cir.1985) (plaintiff's attempt to argue that "income" does not mean wages or salary was patently frivolous; every court addressing the issue has held statute imposing federal tax on wages to be constitutional); *Walker v. United States*, 1990 WL 61872 at *2 (W.D. Pa. 1990) (stating that the tax code "was not intended to exclude individuals or to limit the ordinary meaning of the term 'person' so as to exclude individuals or 'natural persons'") (*quoting United States v. Rice* [81-2 USTC ¶ 9718], 659 F.2d 524, 528 (5th Cir.1981)).

In sum, Beeman's arguments in favor of a dismissal of this action are the kind of "'tax protester rhetoric and legalistic gibberish' that have been repeatedly rejected by

the courts." *Lanier, supra*, at *5 (*quoting Stouch v. Williams Hospitality Corp*., 22 F. Supp. 2d 431, 434 (E.D. Pa.1998) (dismissing pro se claims as frivolous); *Angstadt v. IRS*, No. 99-4173, 1999 WL 820866, at *3 (E.D. Pa. Oct.12, 1999) (affirming order of bankruptcy court overruling objections to proof of claim that were "premised on frivolous and erroneous readings of the law"); *United States v. Weatherly*, 12 F. Supp. 2d 469, 469 n. 1 (E.D. Pa.1998) (listing tax protest arguments rejected by the courts)). Accordingly, Beeman's motions to dismiss the complaint will be denied.

B.  <u>Beeman's Motion to Strike the Default</u>

Beeman has also filed a motion to strike the December 3, 2010 entry of default against Defendants Fifth Third and Autumn Frost, his wholly-owned entities.  The United States has opposed this motion on the basis that Beeman is not a licensed attorney and therefore cannot represent these corporations or file motions on their behalf.

The United States is correct.  Corporations cannot be represented *pro se*, which is essentially what Beeman is attempting to accomplish by filing the motion to strike the defaults entered against Fifth Third and Autumn Frost.  *See Simbraw, Inc. v. United States*, 367 F.2d 373, 373 (3d Cir. 1966) (per curiam) (holding that "a corporation [must], to litigate its rights in a court of law, employ an attorney at law to appear for it and represent it in the court"); *Universal Steel Bldgs. Corp. v. Shore Corp. One*, Civil Action No. 09-0656, 2010 WL 1142039 at *2 and n.1 (W.D. Pa. Mar. 24, 2010); *Rhino Assocs., L.P. v. Berg Mfg. & Sales Corp.*, 531 F. Supp.2d 652, 656 (M.D. Pa.2007) (entry of default against corporation was warranted where corporation had failed to secure legal counsel and "otherwise defend itself" pursuant to Fed. R. Civ. P. 55(a)).

Accordingly, Beeman's Motion to Set Aside Clerk's Entry of Default will be denied. Defendants Fifth Third and Autumn Frost will be directed to obtain counsel within twenty (20) days and (as discussed in more detail below) show cause why judgment should not be entered against them.

### C. The United States' Motions for Summary Judgment

The United States has filed two separate motions for partial summary judgment, the first of which pertains to Count I of the complaint and the second of which pertains to Counts II through VI. These motions will be addressed separately.

#### 1. *The United States' First Motion for Partial Summary Judgment*

In its first motion for partial summary judgment, the United States seeks to reduce to judgment its assessments for Beeman's income tax liabilities for the tax years 1994, 1996, 1997, and 2002 through 2006. For these years, the United States claims, Beeman's indebtedness for federal income taxes and statutory interest and penalties totaled $2,124,396.80 as of November 15, 2010 and have continued to accrue since that time.

"An assessment is a determination by the IRS that a taxpayer owes the federal government a certain amount of unpaid taxes." *United States v. Kavanaugh*, No. 02:07-cv-0432, 2009 WL 1177088 at *5-6 (W.D. Pa. April 29, 2009) (*citing United States v. Fior D'Italia, Inc.*, 536 U.S. 238, 242 (2002)). Under federal tax law, a tax lien is deemed to exist against all of a taxpayer's property as of the date an assessment of unpaid taxes is made if that assessment remains unpaid. *See* 26 U.S.C. §§ 6321 and 6322; *United States v. Green,* 201 F.3d 251, 253 (3d Cir. 2000). Moreover, "[b]ecause

the IRS's determination that a tax is owed is presumed correct, the United States can establish a *prima facie* case of the tax liability charged by introducing into evidence certified copies of the certificates of tax assessment." *Stuler, supra,* at 801, **2. *See also Green,* 201 F.3d at 253 (assessments are presumed to be valid and establish a *prima* facie case of liability against a taxpayer)(*citing United States v. Vespe*, 868 F.2d 1328, 1331 (3d Cir.1989)). Once a *prima facie* case has been made, the taxpayer bears the burden of proving that the assessment is incorrect. *Stuler, supra,* at 801, **2; *Francisco v. United States*, 267 F.3d 303, 319 (3d Cir. 2001).

In this case, the United States has submitted the declaration of Ari D. Kunofsky, Esq., a trial attorney with the Tax Division of the United States Department of Justice, who has primary responsibility for this litigation. Accompanying his declaration are certified certificates of assessments, payments, and other specified matters pertaining to Defendant Beeman for the tax years 1994, 1996, 1997, and 2002 through 2006. This evidence constitutes *prima facie* evidence that the United States made valid assessments of income taxes against Beeman with respect to the tax years in question. Specifically, the evidence shows that assessments for unpaid federal income taxes and statutory additions were made as follows:

| Tax Period | Date of Initial Assessments | Amount of Initial Tax Assessments |
|---|---|---|
| 1994 | June 17, 2002 | $12,204 |
| 1996 | September 25, 2000 | $11,479 |
| 1997 | September 25, 2000 | $63,389 |
| 2002 | December 1, 2008 | $7,953 |

| 2003 | May 14, 2007 | $909,428 |
|------|--------------|----------|
| 2004 | April 30, 2007 | $42,735 |
| 2005 | July 14, 2008 | $982 |
| 2006 | July 14, 2008 | $1,265 |

Further, the United States has submitted transcripts of account, along with the Declaration of Revenue Officer Advisor Reviewer Bruce Clark, showing that, as of November 15, 2010, Beeman was indebted to the United States for unpaid taxes, statutory interest, and penalties in an amount totaling $2,124,396.80.

By virtue of this evidence, the United States has met its burden of demonstrating *prima facie* entitlement to summary judgment in its favor as to Count I of the complaint, and the burden necessarily shifts to Beeman to prove that the assessment is erroneous. *Kavanaugh*, *supra*, 2009 WL 1177088 at *5-6 (*citing Welch v. Helvering*, 290 U.S. 111, 115 (1933)).

In response to the government's motion, Beeman has filed what he styles an "Answer and Verified Complaint of Libel" and a supporting "memorandum" [22]. These documents consist mostly of legal gibberish and set forth no comprehensible theory of a defense. Among other things, Beeman appears to continue to insist that this case involves a cause of action under admiralty and/or maritime law, an assertion which this Court previously rejected in *United States v. Beeman*, Civil Action No. 1:09-cv-158-SJM, 2010 WL 653062 at *9 (W.D. Pa. Feb. 19, 2010). Beeman further complains that the federal tax liens filed against him and the levies imposed on his income required court approval -- also issues which this Court resolved adversely to Beeman in the prior

litigation.  *See id.* at * 7-8, *aff'd*, 388 Fed. Appx. 82, 2010 WL 2977480 (3d Cir. July 28, 2010).

Beeman also appears to be laboring under the mistaken beliefs that:  (a) this Court cannot adjudicate the subject tax liens unless he voluntarily submits himself to the Court's jurisdiction, (b) the federal government must be treated as a private corporate citizen lacking sovereignty which is empowered to act only in conformity with a corporate charter; (c) the instant action was not authorized by the Attorney General as required by 26 U.S.C. §7401; and (d) the term "taxpayer" under the Internal Revenue Code refers not to Beeman but to the United States in its corporate capacity.  Beeman's claim about lack of proper authorization is not factually supported, while his other claims fall into the category of frivolous, albeit routine, tax-protester arguments.  *See, e.g., Stuler, supra,* 396 Fed. Appx. at 801, 2010 WL 3899620 at **2 (rejecting taxpayer's claims, *inter alia*, that the federal government "has no authority over sovereign Americans" and is a private corporation and noting that "these arguments amount to no more than variations on tax-protest arguments, which have uniformly been rejected by this and other federal courts").

Beeman has also filed, somewhat belatedly, his own "motion to dismiss" the government's motion for partial summary judgment.  In his motion [32] and supporting brief [36], Beeman reiterates many of these same frivolous arguments, *e.g.*, that this Court lacks jurisdiction over the instant action and that the United States is a private corporation and can act only in conformity with its corporate charter.  Beeman's other conclusory assertions – that the IRS "falsifies documents routinely" as a "matter of public record" and that the United States is somehow acting unlawfully at the behest of

the International Monetary fund – are utterly unsupported by proper Rule 56 evidence and fail to expose a genuine issue of material fact in light of the other undisputed evidence in this record.

Beeman also asserts in conclusory fashion -- without any factual details much less evidentiary support --  that the statute of limitations on "some years" have expired and also that "in virtually every year assessed [he] would have received a refund for the tax years."  These mere blanket assertions are facially insufficient to raise a genuine issue of material fact.  Significantly, Beeman has failed to adduce any evidence, or even a cogent explanation, to show that he owes less than the $2.1 million in income taxes and other liabilities documented by the United States for the years in question. Moreover, as to the timeliness issue, the court notes that, under 26 U.S.C. § 6321, the government's tax liens arise at the time the assessments are performed and, under § 6322, they continue until the collection statute of limitations expires or the tax liability is satisfied.  In general, the United States has 10 years from the date of assessment within which to collect any unpaid liability.  *See* 26 U.S.C. § 6502(a).  The first assessments in this case (pertaining to tax years 1996 and 1997) occurred on September 25, 2000 and, thus, the United States had 10 years, or at least until September 24, 2010, within which to file suit for collection of the 1996 and 1997 tax liabilities.  The complaint in this case was filed on September 22, 2010 and, therefore, the action is timely.

In his document styled "Response to United States March 17, 2001 Response to [Beeman's] Motion to Dismiss" [38], Beeman further claims that the government's complaint must be dismissed because the complaint lists the tax years in question as "1994, 1996, 1997, 2002, 2003, 2004, 2005, 2006," whereas the government's

"Response to Ebert Beeman's Motion in Support of Dismissing the United States'

Motion for Partial Summary Judgment" [37] filed on March 17, 2011 states that the tax

year in question are "1994, 1996, 1997, 2002, 2006."  In point of fact, the latter

document lists the tax years in question as "1994, 1996, 1997, and 2002 to 2006."  (See

Doc. No. 37 at p. 2.)  Thus, there is no discrepancy as between the two referenced

documents but, even if there were, a simple typographical error of this sort would be

insufficient on this record to establish a genuine issue of material fact relative to

Beeman's tax liabilities.

Beeman also speciously claims that he has relinquished his entire estate to "the

secured party, holder in due course with a priority perfected Uniform Commercial Code

lien" which, he opines, takes priority over the government's tax lien.  (*See* Petitioner

Response to United States March 17, 2011 Response [to] Motion to Dismiss [38] at p.

2.)  He further claims that this "Secured party is foreign to the United States and as such

any legal matters should be taken to the International Trade Court."  (*Id.*)

The so-called foreign "secured party" to whom Beeman refers is, actually,

himself.  I note that, on February 14, 2011, the government filed its "Notice Regarding

Dismissal of Ebert Beeman's Bankruptcy and Supplement to the United States' Second

Motion for Summary Judgment" [35].  Appended to this notice are records documenting

that, on April 26, 2009, Beeman purported to assign himself a secured interest in the

following "collateral":

> All Certificates of Birth Document #[   ]1949 as herein liened and claimed at a
> sum certain $100,000,000.00, Pennsylvania Driver License #[   ]572, UCC
> Contract Trust Account Number [   ]-6776, Exemption Identification Number [ ]
> 6776, Auto TRIS and CUSIP Number; [   ]6776, Security Agreement No. SA-xx-
> 052009 EBG, Power of Attorney No. POA 7007 0710 0001 3285 8311 EGB, Hold

Harmless Indemnification Agreement No. HH1 7007 0710 0001 3285 8298 EGB, Copyright Notice Agreement No. 7007 1490 0004 6996 1056 EGB, [    ]6776, Delaware Corporation Strivin[g]forfreedom, Inc.  Said registration is to secure the rights, title(s) and interest in an[d] of the Root of Title and Birth Certificate #[   ]1949 as received by the Pennsylvania DEPARTMENT OF HEALTH AND WELFARE (Division of Vital Statistics), DNA, Retina Scans and all Debentures, Indentures, Accounts, and all the Pledges represented by same included but not limited to the pignus, hypotheca, herediments, red, the energy and all products derived therefrom, nunc pro tunc, but not limited to all capitalized names: EBERT GORDON BEEMAN, EBERT G. BEEMAN, E.G. BEEMAN, EBERT BEEMAN, or Ebert G. Beeman or any derivative thereof as used in commerce, and all contracts, agreement, and signatures and/or endorsements facsimilies, printed, typed or photocopied of owner's name predicated on the "Straw-man," Ens legis/Trust described as the debtor and all property is accepted for value and is Exempt from levy.  Record owner is not the guarantor or surety to any other account by explicit reservation.  Adjustment of this filing is from Public Policy HJR-192 and UCC1-104 and 10-104.  All proceeds, products, accounts, baggage and fixtures and the Orders there from are to be released to the Secured Party as the authorized representative of the debtor.  Debtor is a commercial transmitting utility and is a trust.

(Notice regarding Dismissal of Ebert Beeman's Bankruptcy and Supplement to the

United States' Second Motion for Summary Judgment [35] at Ex. 102 [35-2] pp. 1, 3.)

Notably, the UCC filing lists the debtor's "exact full legal name" as "EBERT

GORDON BEEMAN" (all capital letters) and the secured party's name as "Ebert Gordon

Beeman" (initial capital letters only).  The distinction appears to be purposeful and,

together with the reference to "HJR 192," appears to invoke a contrived and convoluted

tax-defier theory known as "redemption," which has been described by one court as

"equal parts revisionist legal history and conspiracy theory."  *Bryant v. Washington*

*Mutual Bank*, 524 F. Supp. 2d 753, 758 (W.D. Va. 2007).

According to the "redemption" theory, "each citizen is entitled to redeem the

value of an account held by the Treasury Department, which holds the proceeds of a

sale of that citizen's birth certificate."  *Rasheed v. Comerica Bank,* 2005 WL 3592009 at

*1 (E.D. Mich. Nov. 2, 2005) (citing Bureau of the Public Debt, "Bogus Sight Drafts/Bills of Exchange Drawn on the Treasure," http://www.publicdebt.treas.gov/cc/ccphony8.htm (last visited on Oct. 31, 2005)).  The U.S. District Court for the Western District of Virginia has summarized the "redemption" theory thus:

> Supposedly, prior to the passage of the Fourteenth Amendment, there were no U.S. citizens; instead, people were citizens only of their individual states.  Even after the passage of the Fourteenth Amendment, U.S. citizenship remains optional.  The federal government, however, has tricked the populace into becoming U.S. citizens by entering into "contracts" embodied in such documents as birth certificates and social security cards.  With these contracts, an individual unwittingly creates a fictitious entity (i.e., the U.S. citizen) that represents, but is separate from, the real person.  FN8  Through these contracts, individuals also unknowingly pledge themselves and their property, through their newly created fictitious entities, as security for the national debt in exchange for the benefits of citizenship.  However, the government cannot hold the profits it makes from this use of its citizens and their property in the general fund of the United States because doing so would constitute fraud, given that the profits technically belong to the actual owners of the property being pledged (i.e., the real people represented by the fictitious entities).  Therefore, the government holds the profits in secret, individual trust accounts, one for each citizen.

> > FN8. Further thickening the plot, the name of the fictitious entity is the real person's name in all-capital letters, which apparently explains why names are commonly written in all-capital letters on birth certificates, driver's licenses, and other government documents.

> Because the populace is unaware that their birth certificates and such are actually contracts with the government, these contracts are fraudulent.  As a result, the officers of government are liable for treason unless they provide a remedy that allows an individual to recover what she is owed -- namely, the profits held in her trust account, which the government has made from its use of her and her property in the commercial markets.  In 1933, the government provided just such a remedy with House Joint Resolution 192, [ ] and the Uniform Commercial Code (UCC) provides the means for a person to implement it.  The fact that virtually no one is aware of this remedy or how to use it is all part of the government's scheme -- if no one takes advantage of the remedy, the government can keep the money, so it is in the government's interest that the remedy be obscure.  However, one such as Plaintiff, who learns of and is able to implement the remedy, can supposedly use the debt owed to her by the government to discharge her debts to third parties with Bills of Exchange that are drawn on her trust account.

> Thus, Plaintiff undertook the arduous process of implementing the supposed remedy, a process its adherents sometimes refer to as "redemption." This consisted primarily of filing various UCC Financing Statements (Forms UCC1 and UCC3) with the Secretaries of State of both Michigan and Virginia.  [ ]  In these financing statements, Plaintiff lists herself as both the secured party and the debtor, her apparent intent being to register a security interest in the fictitious entity that was created by her birth certificate and other government documents (i.e., the U.S. citizen "MAUREEN FRANCIS BRYANT"). [ ] …

524 F. Supp. 2d at 758-59 (internal footnotes omitted).  The *Bryant* court found that the plaintiff's attempt to create a "bill of exchange" for use as a negotiable instrument, based upon her invocation of the redemption theory, was "clearly nonsense in almost every detail." *Id.* at 760.  "Most importantly," the court observed, "the alleged legal basis for her claim, House Joint Resolution 192 and *Guaranty Trust Co. of New York v. Henwood*, 307 U.S. 247, 59 S. Ct. 847, 83 L. Ed. 1266 (1939), address nothing more than the U.S. monetary shift away from the gold standard and provide absolutely no support for her position."  *Id.*  "Neither," the court noted, "mentions nor even alludes to secret trust accounts, a remedy for government fraud, Bills of Exchange, the UCC, or any of the other implausible elements of [p]laintiff's claim."  *Id.*  Other courts have rejected similar tactics premised upon "redemptionist" or "sovereign citizen" theories. *See, e.g., U.S. Bank, N.A. v. Phillips,* 852 N.E.2d 380, 381-82 (Ill. App. 2006); *McElroy v. Chase Manhattan Mortg. Corp.,* 134 Cal. App.4th 388, 36 Cal. Rptr.3d 176, 177-80 (2005)*; cf. United States v. Williams,* 476 F. Supp. 2d 1368, 1372 (M.D. Fla.2007)*; Rasheed, supra,* at *1; *Ray v. Williams,* No. CV-04-863-HU, 2005 WL 697041, *1-2, *5-6 (D. Or. Mar. 24, 2005) (citing cases).

In sum, Beeman's claim that he has assigned a perfected security interest to himself is patently frivolous.  Equally frivolous and unavailing is his attempt to cast

himself as a "foreign" individual not subject to this Court's jurisdiction.  Because

Beeman's motion to dismiss [32] is patently lacking in merit, it will be denied with

prejudice.

Conspicuously absent from Beeman's papers is any cogent theory, much less

evidence, that contradicts or otherwise undermines the government's *prima facie*

evidence of valid and accurate tax assessments.  Because Beeman has failed to

introduce any evidence that could establish a genuine dispute as to the correctness of

the assessments against him, the United States is entitled to summary judgment on

Count I of its complaint.

## 2.  *The United States' Second Motion for Summary Judgment*

In its second Rule 56 motion, the United States seeks summary judgment as to

Counts II and III of the complaint.  Specifically, the United States seeks, under Count II,

to foreclose upon its tax liens against the Four Real Properties.  Under Count III, the

government seeks an order declaring that Fifth Third, the current titled owner of the

Four Real Properties, is Beeman's nominee.[4]

Pursuant to 26 U.S.C. 7403(a), the United States may sue to foreclose its tax

liens against a taxpayer's property in cases "where there has been a refusal or neglect

to pay any tax, or to discharge any liability in respect thereof…"  26 U.S.C. § 7403(a).

*See United States v. Rogers*, 461 U.S. 677, 692 (1983).  Where the United States

seeks to foreclose, the district court must, after notice to the parties, "finally determine

---

[4] If the United States is granted a summary judgment on Counts II and III of the complaint, then the remaining Counts (IV through VI), which are alternative theories, would become moot.

the merits of all claims to and liens upon the property," *id.* at § 7403(c), after which point the property should be sold. *Id.*

In this case, each of the Four Real Properties is titled in the name of Defendant Fifth Third. The United States nevertheless asserts that it is entitled to foreclose upon the properties because Fifth Third is merely Beeman's nominee.

A nominee is one who holds bare legal title to property for the benefit of another. Black's Law Dictionary (7th ed. 1999). *See May v. United States*, No. 07-10531, 2007 WI 3287513 at *1 (11th Cir. Nov. 8, 2007); *Scoville v. United States*, 250 F.3d 1198, 1202 (8th Cir. 2001). "It is well settled that the IRS may properly levy against property of a delinquent taxpayer's nominee." *In re Richards*, 231 B.R. 571, 578 (Bankr. E.D. Pa. 1999) (citing cases). *See also United States v.* Kudasik, 21 F. Supp. 2d 501, 508 (W.D. Pa. 1998) ("Property of the nominee or alter ego of a taxpayer is subject to the collection of the taxpayer's tax liability.") (*quoting Shades Ridge Holding Co. v. United States*, 888 F.2d 725, 728 (11th Cir.1989)).

This theory, which is based on equitable principles, focuses on the relationship between the taxpayer and the property and "attempts to discern whether a taxpayer has engaged in a sort of legal fiction, for federal tax purposes, by placing legal title to property in the hands of another while, in actuality, retaining all or some of the benefits of being the true owner." *In re Richards, supra*, at 578. The critical factor in determining whether one is a nominee is whether the taxpayer "has 'active' or 'substantial' control" over the property. *Kudasik*, 21 F. Supp. 2d at 508 (*quoting Shades Ridge Holding Col, supra*, at 728). "Factors which inform that determination include the amount of consideration paid by the nominee, whether the property was placed in the

nominee's name in anticipation of a suit, the relationship between the transferor and the nominee, the failure to record the conveyance, the retention of possession by the transferor, and the continued enjoyment by the transferor of the benefits associated with the property." *Id.* at 508-09 (*citing United States v. Klimek*, 952 F. Supp. 1100, 1113 (E.D.Pa.1997)). These factors, though relevant, are not exclusive and should not be applied in a mechanical fashion. *In re Richards*, 231 B.R. at 579.

Here, the evidence of record, which is currently undisputed, demonstrates that Beeman became sole owner of the Four Real Properties by deeds dated July 2, 1973, March 22, 1974 and September 18, 1985. Beeman purported to transfer his ownership interests in the Four Real Properties to his father, Defendant Howard Beeman, and various wholly owned companies in the 1980s and early 1990s. He also purported to transfer mortgage interests to his parents, Defendants Howard and Lillian Beeman, in 1992. In an order entered on October 9, 1992 in the case of *David Kuczynski, et al. v. E.G. Beeman, et al.,* No. 10455 of 1992, the Erie County Court of Common Pleas voided these transfers and mortgages as fraudulent and ruled that they had no legal effect in the *Kuczynski* case. This same court order also directed Beeman not to transfer any of the Four Real Properties or create any mortgages or encumbrances against them without first obtaining specific written approval from the court. (See Pl.'s Append. in Supp. of Mot. for Summ. Judg. [31-1] at Ex. 105.) The October 9, 1992 court order was filed with the Erie County Recorder of Deeds on that same date at book number 234 and page 452.

The United States has submitted, as part of the record in this case, the docket from the *Kuczynski* litigation, which shows that Beeman never sought or obtained

permission from that court to make subsequent transfers of his properties. Despite this, the record also shows that Beeman attempted to transfer the Four Real Properties to a number of entities in transactions postdating the 1992 court order.

Documents of record show that, on October 30, 2006, Ebert purportedly transferred the Four Real Properties to a company wholly owned by him and designated "Striving for Freedom, Inc," for the stated price of $50,000. On March 21, 2007, Striving for Freedom purported to grant a mortgage interest in two of the properties[5] to another wholly-owned Beeman entity designated "Searching for Freedom, Inc.," ostensibly in exchange for a $850,000 note. On January 2, 2008, Beeman assigned the $850,000 mortgage interest to Defendant Autumn Frost, also a company wholly-owned by him. On October 16, 2007, Striving for Freedom, Inc. purported to transfer the Four Real Properties to Defendant Fifth Third – another company wholly-owned by Beeman – for the stated price of $50,000. Beeman is the sole officer of Striving for Freedom, Inc., Searching for Freedom, Inc., Autumn Frost, and Fifth Third Financial.

Applying the factors enumerated above relative to evaluating "nominee" status, the United States maintains that, despite the ostensible sales price of $50,000 for each sale of the Four Real Properties in 2006 and 2007, no consideration was actually conferred in these transactions.[6] In fact, the $50,000 consideration stated on the face of the deeds was never reported on Beeman's tax returns. Moreover, the government argues, even if the transfer did occur, the monies would simply have passed from one Beeman-controlled entity to another, making any such consideration illusory.

---

[5] The two properties at issue were those located at 12744 and 12752 Route 19 in Waterford, Pennsylvania.

[6] Defendants Fifth Third and Autumn Frost have yet to answer the complaint in this matter or rebut that assertion.

The United States also notes that Defendants Beeman and Fifth Third Financial have a close relationship, inasmuch as Beeman is the sole officer and owner of Fifth Third.  In addition, Beeman suggests in his motion to set aside the default against Defendants Fifth Third and Autumn Frost that he has attempted to represent their interests, stating "Ebert Beeman has not failed to take action but has been incorporating all Pleadings, Answers, Counterclaims timely inclusive of Autumn Frost, LLC [and] Fifth Third Financial, LLC as if one…"   (*See Def.'s Mot. to Set Aside Default* [27] at p. 2.)

The government next contends that, while the transfers of the Four Real Properties were technically recorded, this factor should not be given any weight because Beeman took other action to conceal his ownership of the properties. According to the declaration of Revenue Officer Ed Pattison, Beeman lied about his ownership of the property known as 12744 Route 19 in Waterford and the libertarian notary business carried out at that location, claiming during a November 2007 meeting with Pattison that the property and business were owned by an individual named William Whipple.  Pattison later discovered that William Whipple was a signatory of the Declaration of Independence from New Hampshire who died in 1785.  When confronted with this information, Beeman allegedly confessed to owning the business and the property at 12744 Route 19.

The United States argues that it is Beeman who retains possession of the Four Real Properties, enjoys their continued use, and carries the burden of ownership relative to the properties.  According to Pattison's declaration, Beeman has admitted that Defendant Fifth Third and its predecessors produce no income and incur no expenses and that these entities were used by Beeman to protect his privacy.

Moreover, Beeman's 2006 and 2007 tax returns indicate that Beeman himself is the owner of the Four Real Properties, that he receives rental income from them and that he pays the expenses for maintaining them.

In sum, the United States argues that Defendant Fifth Third should be considered the nominee of Beeman because: (a) no real consideration was received for the transfers to Fifth Third Financial; (b) Beeman has total dominion and control over Fifth Third; (c) Beeman retains all of the benefits and costs of ownership of the Four Real Properties; and (d) the purported transfers of Beeman's interests in the properties were void under state law by virtue of the order entered on October 9, 1992 in the *Kuczynski* case. The United States further contends that it is entitled to foreclose its lien upon Beeman's property – nominally titled in Fifth Third's name -- inasmuch as Beeman has refused or neglected to pay his income taxes. *See* 26 U.S.C. § 7403(a) (authorizing civil actions by the Attorney General or his delegate to enforce a tax lien or to subject a taxpayer's property to payment of a tax liability in "any case where there has been a refusal or neglect to pay any tax, or to discharge any liability in respect thereof.").

Pursuant to § 7403(b) and (c), once the district court determines that certain property is subject to a federal tax lien, it must determine each potential interest holder's right and then should sell the property. Here, despite the fact that Defendants Autumn Frost, Fifth Third, and Howard Beeman were served with the complaint, none of these Defendants has appeared and answered the complaint or otherwise defended the litigation. Moreover, while Defendant Lillian Beeman has filed a response to the complaint, she does not appear to be asserting an interest in the Four Real Properties. Although she was served with a court order directing her to respond to the

government's second motion for summary judgment, she never filed any response. Beeman was also directed to respond to the United States' second summary judgment motion, but his only responsive filings following this briefing order pertained to his previously-discussed motion to dismiss the government's motion for partial summary judgment relative to Count I.   In addition, as previously noted, the United States has produced uncontested evidence in support of its theory that Defendant Fifth Third, the titled owner of the properties, is acting as Beeman's nominee.  Accordingly, the government contends that this Court should order the sale of the Four Real Properties free and clear of any encumbrances the various Defendants may have been able to claim.

Although we find no genuine issue of material fact on the record as it currently stands relative to the governments' request for judgment on Counts II and III of the complaint, we will nevertheless defer entering judgment for a period of twenty (20) days, during which time Defendants Fifth Third and Autumn Frost must secure counsel if they intend to defend the instant litigation.  Further, on or before the expiration of this twenty-day period, Defendants Fifth Third, Autumn Frost, and Howard Beeman will be directed to show cause why the government's request for judgment relative to Counts II and III should not be granted.  Failure to do so by any of these Defendants will be construed by this Court as an indication that said Defendant has no intention of defending this litigation.

D.  <u>The United States' Motion to Dismiss Beeman's Counterclaims</u>

In response to the government's first motion for partial summary judgment

seeking to reduce Beeman's tax assessments to judgment, Beeman filed a document

styled "Answer and Verified Complaint of Libel" [22].  Although the "Answer and Verified

Complaint" is largely incomprehensible, it is at least evident from the document that

Beeman is attempting to assert a libel claim against agents of the IRS and/or the

Secretary of the Treasury based on their actions in connection with the subject tax

assessments and ensuing litigation.  More specifically, Beeman appears to claim that,

by filing notices of tax liens against his property, IRS agents have damaged his good

name and his ability to freely use, transfer or sell his properties, thereby causing him "to

be put into a position of involuntary servitude and peonage against [his] will and the

laws of the United States of America, the state of Pennsylvania and the Law of

Nations…"  (Answer and Verified Complaint of Libel [22] at p. 5.)  As relief, Beeman

requests that all taxes collected from him be returned and that the notices of federal tax

liens be released.  The United States has moved to dismiss these counterclaims on the

basis of sovereign immunity.

It is well established that federal courts lack jurisdiction over claims against the

United States unless Congress expressly and unequivocally waives the United States'

immunity to suit, *Stuler, supra*, 396 Fed. Appx. at 800, 2010 WL 3899620 at **1 (*citing*

*United States v. Bein*, 214 F.3d 408, 412 (3d Cir. 2000)), and "[a] suit against IRS

employees in their official capacity[ies] is essentially a suit against the United States."

*Pilchesky v. United States*, Civil Action No. 3:08-MC-0103, 2008 WL 2550766 at *3

(M.D. Pa. June 23, 2008) (citing *Gilbert v. DaGrossa*, 756 F.2d 1455, 1458 (9th

Cir.1985)).  Accordingly, "[s]uch a suit is barred by the doctrine of sovereign immunity except to the extent that Congress has unequivocally consented to suit.  *Pilchesky, supra*, at *3 (*citing Upton v. I.R.S* ., 104 F.3d 543, 545 (2d Cir.1997)).  As our circuit court of appeals has observed, "Congress has expressly invoked sovereign immunity with respect to virtually all tax assessment challenges and demands for declaratory and injunctive relief under the IRC, except in narrow situations…"  *Stuler, supra*, 396 Fed. Appx. at 800, 2010 WL 3899620 at **1.  *See* 26 U.S.C. §7421(a); 28 U.S.C. §2201. Those narrow exceptions are inapplicable to the case at bar.  Accordingly, sovereign immunity bars Beeman's counterclaim against the United States and its agents and dismissal of such claim is appropriate.[7]

## V.    CONCLUSION

Based upon the foregoing reasons, Beeman's various motions to dismiss the complaint will be denied.  Beeman's motion to dismiss the United States' partial motion for summary judgment will also be denied.  The motion of the United States for summary judgment as to Count I of the complaint will be granted.  Beeman's motion to set aside the Clerk's entry of default as against Defendants Fifth Third and Autumn Frost will be denied.  With respect to the United States' second motion for summary judgment, the Court will defer its ruling for a period of twenty (20) days, during which time Defendants Fifth Third and Autumn Frost must secure counsel if they intend to defend the instant litigation.  In addition, Defendants Fifth Third, Autumn Frost and Howard Beeman  will be directed to show cause, within the next twenty (20) days, why

---

[7] The Court notes that Beeman has not sought leave to amend his counterclaim(s) but, in any event, granting him leave to amend would be futile.  *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002). Accordingly, his counterclaim(s) will be dismissed outright with prejudice.

judgment should not be entered in favor of the United States relative to Counts II and III of the complaint.  Finally, the United States' motion to dismiss Beeman's counterclaims will be granted.

An appropriate order follows.

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

UNITED STATES OF AMERICA,    )
                              )
          Plaintiff,      )     Case No.  1:10-cv-237-SJM
      v.               )
                              )
EBERT G. BEEMAN, *et al.*,    )
                              )
         Defendants.    )

# O R D E R

AND NOW, *to wit*, this 30th day of June, 2011, for the reasons set forth in the accompanying Memorandum Opinion,

IT IS ORDERED that the Motions to Dismiss the complaint filed by Defendant Ebert G. Beeman on the basis of lack of subject matter jurisdiction [8], improper venue [9], and failure to state a legitimate claim [10] shall be, and hereby are, DENIED with prejudice.

IT IS FURTHER ORDERED that Defendant Beeman's Motion to Dismiss the United States' Motion for Partial Summary Judgment [32] shall be, and hereby is, DENIED with prejudice.

IT IS FURTHER ORDERED that the Motion for Partial Summary Judgment as to Count I of the complaint [12] filed on behalf of the United States shall be, and hereby is, GRANTED and a separate order of judgment shall be entered forthwith relative to that count.

IT IS FURTHER ORDERED that the United States' Motion to Dismiss Ebert Beeman's Counterclaims [26] shall be, and hereby is, GRANTED.

IT IS FURTHER ORDERED that the Motion to Set Aside Clerk's Entry of Default [27] filed by Defendant Ebert G. Beeman shall be, and hereby is, DENIED with prejudice.

IT IS FURTHER ORDERED that the Court will DEFER ruling on the United States' Second Motion for Summary Judgment [29] for a period of twenty (20) days, or until July 20, 2011, during which time Defendants Fifth Third Financial, LLC and Autumn Frost, LLC shall secure legal counsel if it be their intention to defend this litigation. IT IS FURTHER ORDERED that Defendants Fifth Third Financial, LLC, Autumn Frost, LLC and Howard Beeman show cause, on or before July 20, 2011, why the government's request for judgment relative to Counts II and III should not be granted. Failure to show cause as directed herein will be construed by this Court as an indication that said Defendant has no interest in defending this litigation.

s/  <u>Sean J. McLaughlin</u>

SEAN J. McLAUGHLIN
United States District Judge

cm:    All parties of record.