IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:10-cv-237-SJM |
| v. | ) | |
| | ) | |
| EBERT G. BEEMAN, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM ORDER**

Presently pending before this Court is a renewed motion by the Defendant Ebert G. Beeman pursuant to Fed. R. Civ. P. 60(b) to obtain relief from the Orders of Judgment entered by the Court on June 30 and July 22, 2011. At the motion hearing held on January 31, 2012, I denied Mr. Beeman's original Rule 60(b) motion, noting certain deficiencies in the evidence which he had presented to the Court in support of his motion. I nevertheless permitted Mr. Beeman seven days within which to reassert his motion to the extent he could correct the deficiencies in the supporting evidence. More specifically, I directed that Mr. Beeman should supply the Court with a copy of any returns or documents that he has submitted, or which he intends to submit, to the IRS for any of the tax years at issue, and I specifically admonished that the documents should bear Mr. Beeman's signature under penalty of perjury or otherwise show that he has attested by sworn affidavit to the accuracy of the information contained in the tax returns. I further directed that Mr. Beeman should submit an affidavit from the tax

1

preparer attesting to the method of calculation, the records relied upon, and the accuracy of the return.

Mr. Beeman has since submitted materials within the designated time frame which essentially comply in all material respects with my order. Nevertheless, due to Mr. Beeman's appeal, which is still currently pending before the Third Circuit, I remain circumscribed in terms of my discretion to act on Mr. Beeman's renewed Rule 60(b) motion. Pursuant to Rule 62.1 of the Federal Rules of Civil Procedure, my options are limited to the following: (1) defer consideration of Mr. Beeman's Rule 60(b) motion; (2) deny the motion outright; or (3) state either that I would grant the motion if the court of appeals remands for that purpose or that the motion raises a substantial issue.

It bears repeating that the relevant motion before me is a motion pursuant to Rule 60(b) for Relief from Judgment – namely the Orders of Judgment entered on June 30 and July 22, 2011 [Doc. # 40 and 48]. Rule 60(b) provides, in relevant part, that, "on motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding" based on various enumerated reasons, including "any other reason that justifies relief." See Fed. R. Civ. P. 60(b)(6). This catch-all provision requires the movant to demonstrate "extraordinary circumstances" to justify relief from the judgment. *See United States v. Minor*, No. 11-1500, 2012 WL 29062 at *2 (3d Cir. Jan. 6, 2012) (*quoting Gonzales v. Crosby*, 545 U.S. 524, 535 (2005)). To meet this burden, there must be "a showing that without relief from the judgment, an extreme and unexpected hardship will result." *Id.* (*quoting Budget Blinds, Inc. v. White,* 536 F.3d 244, 255 (3d Cir. 2008)).

The Government points out that, for purposes of Rule 60(b)(6), courts are typically disinclined to afford relief from a judgment where the alleged hardship is the result of the movant's own litigation tactics. In a fairly recent unreported decision, the Third Circuit Court of Appeals reaffirmed this principle when it refused to set aside a default judgment that had previously been entered against a taxpayer in a separate federal tax collection action. In *Johnson v. United States,* 375 Fed. Appx. 273 (3d Cir. April 14, 2010), the Court of Appeals reiterated the requirement that a litigant seeking relief under Rule 60(b)(6) must show the presence of "extraordinary circumstances" which, in turn, requires a showing of "an extreme and unexpected hardship." 375 Fed. Appx. at 275. The *Johnson C*ourt found that the mere existence of an IRS lien failed to satisfy this standard, notwithstanding the taxpayer's claim that the lien "impair[ed] [his] ability … to qualify as credit-worthy for most, if not all, major purchase necessities." *Id*. Noting that "extraordinary circumstances rarely exist when a party seeks relief from a judgment that resulted from the party's deliberate choices," *id.* at 276 (*quoting Budget Blinds*, 536 F.3d at 255), the court ruled that the taxpayer did not demonstrate any basis for relief under Rule 60(b)(6).

In this case, it is undeniable that the hardships which Beeman now faces as a result of the pending Judgment Orders are borne of his own poor choices. Notwithstanding this fact, however, there are a number of considerations present here which distinguish this case from *Johnson* and which arguably present the type of extraordinary circumstances that might make relief under Rule 60(b)(6) appropriate.

For one, unlike the taxpayer in the *Johnson* case, Beeman is not seeking to set aside the judgment of a different court. This is potentially significant because, "when a

3

court is deciding whether or not to vacate another court's judgment," as was the case in *Johnson,* the "circumstances must be even more 'extraordinary' because of the additional interest in comity among the federal district courts.'" *Johnson*, 375 Fed. Appx. at 275 (*quoting Budget Blinds*, 536 F.3d at 252). No such concerns are present here, since we are faced only with a challenge to this Court's own judgment orders.

Second, unlike the taxpayer in *Johnson,* Beeman is contesting the amount of the Government's tax assessments, particularly as it pertains to tax years 1997 and 2003, as well as the interest and penalties calculated on the basis of those assessments. This in and of itself would not likely amount to extraordinary circumstances in the ordinary case, but it is potentially significant that, here, Beeman (or more accurately, his accountant) is claiming that the Government over-assessed his tax liability by $877,520 for the year 2003 and by $26,552 for the year 1997. (In all other tax years, Beeman apparently concedes that the Government correctly assessed the amount of taxes owed, or it under-assessed him.) Regarding tax year 2003, if the calculations of Beeman's accountant are ultimately shown to be accurate, they would suggest that Beeman's tax liability for that year was overestimated by a factor of approximately 28 times what he actually owed; it would necessarily follow that the penalties and interest calculated upon that assessment were also, by extension, grossly over-inflated.

Third, although the Government does not, and cannot be expected to, accept Beeman's figures at face value (particularly where Beeman himself supplied some of the information relied upon by his accountant and the Government has not yet had an opportunity to depose Beeman or examine the records upon which he relies), the Government does not appear to take issue with the basic premise that consideration of

4

proper cost-basis figures might dramatically reduce Beeman's true tax liability for the year 2003. Since 2003 resulted in the largest tax assessment by far (i.e., $909,428.00), a significant reduction in this figure could conceivably reveal that the Government obtained an extraordinarily high windfall in its money judgment.

This brings us to the fourth consideration: namely, the possibility that the Government may have obtained a grossly overly inflated judgment from a taxpayer – albeit one who has utterly disregarded the tax laws -- does nothing to advance the interests of justice and instead merely threatens to undermine faith in our public institutions. Counsel for the Government contends that, even if Beeman's figures are ultimately shown to be accurate, he would still owe in excess of $100,000 in interest and penalties for tax years 1997 and 2003, as well as approximately $13,000 in interest and penalties for tax years 2007-2010. The Government also protests that Beeman has yet to file returns for tax years 1998 through 2001.

The short answer to this is that, insofar as tax years 1998 to 2001 and 2007 to 2010 are concerned, those years do not form the basis of this litigation, nor are the Court's orders of judgment in this case intended to address any grievances the Government may have with respect to those years. With respect to tax years 1998-2001 and 2007-2010, we assume the Government has the right and the power to pursue the same remedies against Beeman as it has sought relative to the tax years actually at issue in this case. Moreover, accepting the Government's point that Beeman's ultimate tax liability for the years in question may well exceed $120,000, we simply note that there is a big difference between $120,000 and the $2.1 million judgment which has been entered against Beeman in this case. As counsel for the

5

United States has previously acknowledged, the I.R.S. has no interest in collecting more from a taxpayer than is legitimately owed under the federal tax laws. When the possibility exists that the Government may have obtained a windfall judgment from an individual in the order of hundreds of thousands – and perhaps millions -- of dollars, the interests of justice counsel against an overly rigid and formalistic application of the court's procedural rules.

In sum, at this juncture the Court cannot definitively say that it would grant the Defendant's Rule 60(b) motion if the matter were remanded from the appellate court. Among other things, as I have noted, the Government has had no opportunity as yet to subject the Defendant or his accountant to cross-examination concerning the materials recently submitted, so it remains unclear at this point whether Beeman's current arguments in favor of Rule 60(b) relief will prove to be well-founded. Nevertheless, Beeman's most recent submissions do raise at least a substantial issue as to whether the judgment orders entered in this case accurately reflect his overall liabilities for the tax years in question. Of particular relevance, as we have noted, is tax year 2003 and, to a much lesser extent, tax year 1997. If Beeman's calculations are ultimately shown to be accurate, they would arguably support a finding that "extraordinary circumstances" are present within the meaning of Rule 60(b)(6). Accordingly, based upon the foregoing reasons, I find pursuant to Rule 62.1 of the Federal Rules of Civil Procedure that Defendant Beeman's renewed motion under Rule 60(b) raises a substantial issue as to his entitlement to relief.[1]

---

[1] This Court fully recognizes that, even if a significant miscalculation occurred respecting tax year 2003, it would be as a result of Beeman's own actions in failing to file timely returns and in further failing to supply

Entered this 9th Day of February, 2012.

                                      s/      <u>Sean J. McLaughlin</u>

                                               Sean J. McLaughlin
                                               United States District Judge

cc:    All parties of record.

---

any information to the IRS which would have permitted the agency to properly calculate his cost-basis for tax purposes. In view of this fact, I leave open the question whether, at some future point, sanctions might be appropriate to account for the needless time, energy, and financial resources which the Government has had to expend by virtue of Beeman's vexatious litigation tactics. For present purposes, that question is premature, and it need not be addressed now.